**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00072-JMH**

**JEFFREY CUNDIFF**                                                                                                           **PLAINTIFF**

**v.**

**DOUGLAS ULLRICH,** *et al.*                                                                                     **DEFENDANTS**

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Douglas Ullrich, in his individual capacity as a Covington, Kentucky Police Officer, by and through counsel, and pursuant to Civil Rule 56, respectfully moves the Court for summary judgment. Taking the undisputed material facts in a light most favorable to Plaintiff, Officer Ullrich is entitled to judgment as a matter of law on all claims asserted against him.

Respectfully submitted,

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
Jennifer L. Langen, Esq. (#87960)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY  41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
jlangen@adamsattorneys.com

*Attorneys for Defendant, Douglas Ullrich, in his individual capacity as a Covington, Kentucky Police Officer*

1

**CERTIFICATE OF SERVICE**

    I hereby certify that on this **30th** day of November, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Christopher D. Roach, Esq. and Benjamin T.D. Pugh, Esq.

                                        */s/ Jeffrey C. Mando*
                                        Jeffrey C. Mando, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00072-JMH

**JEFFREY CUNDIFF**                                                                          **PLAINTIFF**

**v.**

**DOUGLAS ULLRICH,** *et al.*                                                            **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Officer Douglas Ullrich, in his individual capacity, by and through counsel, respectfully submits this Memorandum in Support of his Motion for Summary Judgment.

**I.   STATEMENT OF FACTS**

Just after 2:00 a.m. on July 8, 2020, Covington Police Officer Douglas Ullrich was patrolling in Covington, Kentucky, near St. Elizabeth Hospital. Immediately after he turned from James Simpson Way onto Kavanaugh Street heading southbound, he noticed Jeffrey Cundiff's gold Nissan Altima pull away at a high rate of speed in a residential area and blow through a stop sign at the intersection of Kavanaugh and 14th Streets. (Exh. 1, Ullrich BWC at 6:12:27 – 6:12:40; Exh. 2, Uniform Citation)[1]

Officer Ullrich activated his cruiser's overhead flashing lights to initiate a traffic stop. (Exh. 1 at 6:12:56; Exh. 3, Ullrich BWC at 6:12:56) It took approximately 30 seconds for Cundiff to stop, even though Officer Ullrich had also engaged his siren and air horn in that time. (Exh. 1 at 6:12:56 – 6:13:20; Exh. 3 at 6:12:56 – 6:13:22) Additionally, since there were no other cars traveling on the road at that time, and since Officer Ullrich was, by this time,

---

[1] For videos cited herein, the time stamp matches that on the upper right corner of the screen in the video. Videos will also be filed with the Court conventionally.

immediately behind Cundiff's Nissan Altima, there could not have been any confusion as to which car Officer Ullrich was trying to pull over. (Exh. 1 at 6:12:56 – 6:13:20)

In the 30 seconds it took Cundiff to stop, Officer Ullrich could see Cundiff moving inside his car, reaching toward Megan Sprague (his passenger), lifting himself up off the driver's seat, and reaching underneath himself. (Ullrich Depo., p. 16, 20) To Officer Ullrich, who is certified by the International Association of Chiefs of Police (IACP) as well as by the National Highway Traffic Safety Administration (NHTSA) as a drug recognition expert, Cundiff's movements and his delay in pulling over suggested that Cundiff had hidden drugs on his person or inside a body cavity. (Exh. 4, Ullrich CV at DEF00001; Ullrich Depo., p. 16)

Once Cundiff stopped, Officer Ullrich got out of his cruiser, walked to the passenger side of Cundiff's vehicle, and instructed Cundiff to roll the car's windows down and turn the car off. (Exh. 1 at 6:13:41 – 6:13:51; Exh. 3 at 6:13:23 – 6:13:58) Because Cundiff was slow to comply, Officer Ullrich had to repeat these instructions before instructing Cundiff to remove the keys from the ignition and hand them to Sprague. (Exh. 3 at 6:13:48 – 6:14:04)

Without being asked, Cundiff volunteered: "I work for the City of Covington." (Exh. 3 at 6:14:04 – 6:14:08) Officer Ullrich perceived that statement as an attempt by Cundiff to secure favorable treatment during the traffic stop. (Ullrich Depo., p. 13-14, 20) Officer Ullrich explained he had pulled Cundiff over because he had observed Cundiff "flying" through a stop sign at 40 miles per hour without stopping. (Exh. 3 at 6:14:09 – 6:15:27) Officer Ullrich next requested driver's licenses from Cundiff and Sprague. (Exh. 3 at 6:14:09 – 6:15:27) As he retrieved his wallet, Cundiff repeated that he worked for the City of Covington. (Exh. 3 at 6:14:54 – 6:15:12)

2

After securing and reviewing their operators licenses, Officer Ullrich asked Sprague to step out of the car, and she complied. (Exh. 3 at 6:16:15 – 6:16:28)

After Sprague got out of the vehicle, Officer Ullrich spoke with Cundiff. (Exh. 3 at 6:17:42 – 6:17:47) During their conversation, Officer Ullrich told Cundiff he had observed Cundiff moving around inside the car before Cundiff stopped his car. Cundiff responded, "Well, you don't gotta be a dick sucker." (Exh. 3 at 6:17:57 – 6:18:02) Eventually, Officer Ullrich asked Cundiff to get out of the car and handcuffed him. He did so because Cundiff's reaching around inside the car made Officer Ullrich worry that Cundiff could have access to a weapon. (Exh. 3 at 6:18:10 – 6:19:02)

Once handcuffed, Officer Ullrich conducted a routine pat-down search of Cundiff's person, using his gloved hands to feel along Cundiff's legs and pelvic region on the outside of his clothing, before escorting him to the curb to sit near Sprague. (Exh. 1 at 6:18:46 – 6:19:13; Exh. 3 at 6:18:45 – 6:19:18) Cundiff has no complaints about the manner in which the prief pat down search was conducted. (Cundiff Depo., p. 90 – 91)

While Cundiff and Sprague were on the curb, Officer Ullrich went to his cruiser to run background checks. (Exh. 3 at 6:19:18 – 6:25:08)

In the meantime, Officer Mark Richardson, arrived on the scene with Zino, his drug detection canine. (Richardson Depo., p. 11) Officer Richardson escorted Zino around the perimeter of Cundiff's vehicle, an occurrence that was recorded by at least two cameras. (Exh. 1 at 6:20:14 – 6:20:52; Exh. 3 at 6:18:47 – 6:18:51; Exh. 5 at 6:20:20 – 6:21:03) As they walked the perimeter of the vehicle, Zino jumped up at the driver's window. Then, as he walked past the seam of the driver's side rear door, he stopped, turned back, and made his body rigid with his nose on the vehicle. (Exh. 3 at 6:20:41 – 6:20:50; Exh. 5 at 6:20:48 –

3

6:20:56; Exh. 6, Deployment Report) Based on his extensive training and experience in handling drug detection canines generally and Zino specifically, Officer Richardson interpreted Zino's actions as "alerts" to the presence of narcotic odor. (Richardson Depo., p. 39 – 41, 48 – 52)

Officer Richardson advised Cundiff he believed there was probable cause to search his vehicle based on the canine's alerts, to which Cundiff responded, "that's fine." (Exh. 5 at 6:22:50) Hence, Officer Richardson, assisted by other officers, methodically searched Cundiff's car. (Exh. 5 at 6:22:56 – 6:39:32) During the search, an officer located marijuana shake (i.e., seed), but no other drugs were located in the vehicle. (Exh. 5 at 6:38:44 – 6:38:50)

Once Officer Richardson completed his search of Cundiff's car, Officer Ullrich searched Cundiff. Before doing so, Officer Ullrich helped Cundiff from a seated position on the curb and escorted him to the area in front of Officer Ullrich's cruiser so the search would be captured by the cruiser camera. (Exh. 3 at 6:40:45 – 6:40:59) He told Cundiff to spread his feet apart because that would dislodge anything Cundiff might have tucked between his thighs and would have made it more difficult for Cundiff to fight or run. (Ullrich Depo., p. 30) As Officer Ullrich began his search, he instructed Cundiff to "unclench" his muscles because his "entire body was locked up. He was squeezing incredibly hard." (Ullrich Depo., p. 31) Officer Ullrich ran his hands along Cundiff's waistband and down the inside front and inside back of his underwear; Cundiff remained clothed during the entire process. (Exh. 1 at 6:40:59 – 6:42:32; Exh. 3 at 6:40:59 – 6:42:32) In conducting this search, Officer Ullrich used "a bladed hand to go down the length from the top of the cleft, ridge, whatever you want to call it, but his butt crack, down to the bottom of it, to see if there was anything inside his cheeks that he was trying to hide." (Ullrich Depo., p. 33) Officer Ullrich also ran his hand along the

4

seam between Cundiff's hip and groin on one side to determine whether there was anything lodged in that seam; used his hand to check under Cundiff's scrotum, moving Cundiff's scrotum and penis out of the way in order to do so; and, ran his hand along the seam between Cundiff's hip and groin on the other side. (Ullrich Depo., p. 34)

Officer Ullrich did not find any drugs on Cundiff during this search, and he elected not to pursue a warrant for a body cavity search because, in his experience, such warrants are rarely granted absent extreme circumstances. (Ullrich Depo., p. 39)

Officer Ullrich instructed another officer to escort Cundiff to the sidewalk to sit next to Sprague. (Exh. 3 at 6:42:30 – 6:42:45) After issuing Cundiff a citation for disregarding a stop sign and removing the handcuffs, Cundiff left the scene with Sprague. (Exh. 3 at 6:45:01 – 6:46:31)

Cundiff filed this action on June 7, 2021. Pursuant to 42 U.S.C. § 1983, Cundiff asserts causes of action against Officer Ullrich under the First and Fourth Amendments, as well as a cause of action under § 1985 for civil conspiracy. (R.1 Complaint at PageID 1 – 8)

For the reasons that follow, Officer Ullrich is entitled to summary judgment on all claims.

II. **OFFICER ULLRICH IS ENTITLED TO SUMMARY JUDGMENT ON CUNDIFF'S FOURTH AMENDMENT CLAIM**

In Count I of the Complaint, Cundiff asserts a Fourth Amendment claim against Officer Ullrich based on the manner in which Officer Ullrich searched him. Cundiff avers that Officer Ullrich violated the Fourth Amendment by "inserting a finger into [Cundiff's] rectum, repeatedly rubbing his hand between [Cundiff's] buttocks and over [Cundiff's] rectum, fondling [Cundiff's] genitalia, and viewing [Cundiff's] buttocks during the search." (R.1

5

Complaint at PageID 5) Assuming *arguendo*[2] that Officer Ullrich took the actions of which Cundiff complains, those actions did not violate the Fourth Amendment because there was probable cause to search Cundiff for drugs and because the search was carried out in a reasonable manner. Alternatively, Officer Ullrich is entitled to qualified immunity.

### A.   OFFICER ULLRICH HAD PROBABLE CAUSE TO SEARCH CUNDIFF

In the context of a search, probable cause requires only "a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Washington*, 2022 U.S. App. LEXIS 1151 (6th Cir.). If a nexus exists between a crime and the place to be searched, and if the timing is such that the sought-after evidence likely remains at the identified location, probable cause exists. *Id.*

There was a fair probability that contraband or evidence of a crime would be found on Cundiff's person. Cundiff did not stop his vehicle immediately after Officer Ullrich had initiated the traffic stop. In addition, while he was behind Cundiff with his cruiser's lights flashing, Officer Ullrich could see Cundiff reaching toward Sprague, lifting himself up off the driver's seat, and reaching underneath himself. Based on Officer Ullrich's training and experience, those behaviors were typical of persons who hide drugs on their bodies. (Ullrich Depo., p. 16, 20) Further, Cundiff's actions and statements – including taking off at a high rate of speed upon seeing a police cruiser, blowing through a stop sign, not immediately stopping, attempting to influence Officer Ullrich once he had stopped by implying they "are on the same side" because they both work for the City of Covington, and change in attitude once it became apparent that Officer Ullrich would not be influenced by the fact that Cundiff was a

---

[2] Officer Ullrich denies inserting a finger into Cundiff's rectum, touching Cundiff's rectum and fondling Cundiff's genitalia. (Ullrich Depo., p. 33, 41)

6

City employee – suggested to Officer Ullrich that Cundiff felt he was guilty of something. (Ullrich Depo., p. 13, 20 – 21) While Cundiff and Sprague openly discussed their drug use with a female officer, Zino – a drug detection canine – alerted to the odor of drugs in Cundiff's vehicle. (Exh. 1 at 6:20:19 – 6:20:54; Exh. 5 at 6:20:20 – 6:20:59; Exh. 7 at 6:28:27 – 6:40:58; Richardson Depo., p. 21 – 22) Eventually, marijuana seeds – but no actual drugs – were located inside the vehicle. (Exh. 5 at 6:38:44 – 6:38:50) Because there was reason to believe that Cundiff possessed drugs, since the drugs could not be located in the vehicle, and since Officer Ullrich had seen Cundiff engage in behavior typical of someone trying to hide drugs on their person just moments before Cundiff stopped his vehicle, it was reasonable for Officer Ullrich to believe the drugs would be found on Cundiff.

These undisputed material facts demonstrate that Officer Ullrich's search of Cundiff was justified by probable cause Officer Ullrich is, therefore, entitled to summary judgment on Count I of the Complaint.

### B. OFFICER ULLRICH SEARCHED CUNDIFF IN A CONSTITUTIONALLY PERMISSIBLE MANNER

Not only did Officer Ullrich have probable cause to search Cundiff, he conducted that search in a constitutionally permissible manner.

A three-part balancing test determines whether an intrusion into the human body by law enforcement is reasonable under the Fourth Amendment. *U.S. v. Ruffin*, 979 F.3d 528 (6th Cir. 2020). As part of that test, a court weighs: (1) the extent of the threat to the individual's health and safety; (2) the extent of the intrusion on the individual's dignitary interests in personal privacy and bodily integrity; and (3) law enforcement's need for the evidence. *Id.*

The Sixth Circuit has applied that test in three recent cases. In one of those cases, the Sixth Circuit stated that the decision to paralyze and intubate a person for the purpose of

Case: 2:21-cv-00072-DLB-CJS Doc #: 28 Filed: 11/30/22 Page: 10 of 17 - Page ID#: 92

securing evidence from a body cavity presented a significant risk of harm, such that the first factor weighed against reasonableness. *U.S. v. Booker*, 728 F.3d 535 (6th Cir. 2013). With respect to the second factor, the Sixth Circuit concluded that involuntarily paralyzing and intubating a person for the purpose of conducting a cavity search while the person is naked and handcuffed was "immense." *Booker*, *supra*. Finally, the Sixth Circuit stated the availability of significantly less intrusive means of obtaining evidence should be considered in assessing law enforcement's need for the evidence. *Id.* So, the Sixth Circuit considered other evidence of the subject's guilt, including a bag of marijuana that had been found near his seat in the car in addition to other bags found in that area that appeared to contain drug residue. *Id.* Considering the three factors *in toto*, the Sixth Circuit determined that the search was unreasonable. *Id.*

In another case, the Sixth Circuit noted that taking an x-ray and giving a person laxatives posed no risk of harm, concluding that the first factor weighed in favor of ruling that an effort to recover evidence that involved such measures was reasonable. *U.S. v. Banks*, 684 Fed. Appx. 531 (6th Cir. 2017). Although the Court acknowledged that administering an X-ray and laxatives would have intruded on Banks's dignitary interests, it suggested that the presence of a warrant decreased the level of dignitary intrusion. *Id.* And, since the government had little evidence to prove the subject's drug trafficking, the Court ruled the third factor weighed in favor of reasonableness. *Id.* Considering the three factors *in toto*, the Sixth Circuit held that the search was reasonable.

In a third case, the Sixth Circuit opined that because "rectal exams, x-rays, and enemas posed little to no risk" to a person, the first factor weighed in favor of a ruling that an effort to recover evidence that involved such measures was reasonable. *Ruffin*, *supra*. With respect

8

to the second factor, where law enforcement decided to use a more intrusive option (i.e., a rectal examination) before a readily available option that was less intrusive and may have proven equally effective (i.e., an x-ray), where law enforcement officers joked about the intrusions, and where the person was shackled during the entire experience, the court found that the unnecessary affronts to the person's dignitary interests tipped the scale in the direction of an unreasonable search. *Id*. And, since law enforcement had only a single eyewitness and a drug dog alert to establish the subject's guilt, the Court ruled that the third factor weighed in favor of reasonableness. Considering the three factors *in toto*, the Sixth Circuit ruled that "the third and first factors outweigh the second. Although the search could have been handled better – by beginning with an x-ray and treating Ruffin respectfully – the presence of a warrant, the absence of any safety risk, and the police's need for evidence make this search reasonable." *Id.*

Here, Cundiff claims Officer Ullrich inserted "part of his finger" into his rectum for a moment, in a manner that did not cause Cundiff any injuries and did not even cause him to flinch. (Exh. 1at 6:40:59 – 6:42:32; Cundiff Depo., p. 99, 110 – 111) Because there was little, if any, risk to Cundiff's health and safety, the first factor weighs in favor of a finding that the search was reasonable.

During his brief search, no one incapacitated Cundiff and he remained standing and fully clothed. Other than law enforcement officers, no one else was present as Cundiff was being searched. None of the law enforcement officers joked about searching Cundiff or called unnecessary attention to him as he was being searched. If, as Cundiff alleges, Officer Ullrich inserted a finger into his rectum, no one else on the scene even seemed to know that had occurred. Hence, the alleged intrusion was minimal. And, considering these facts, the affront

9

to Cundiff's dignitary interests was also minimal. The second factor, therefore, weighs in favor of a finding that the search was reasonable.

Finally, law enforcement had a great need for the evidence, considering that the evidence they had – that Cundiff had delayed stopping, could be seen moving around inside his vehicle, and Zino's alert – was likely not enough to secure a conviction on drug charges. Thus, the third factor weighs in favor of the reasonableness of the search.

Considering these three factors *in toto*, the search was reasonable. Consequently, Officer Ullrich is entitled to summary judgment on Count I of the Complaint.

### C. OFFICER ULLRICH IS ENTITLED TO QUALIFIED IMMUNITY

Alternatively, assuming *arguendo* that the search was not reasonable, Officer Ullrich is entitled to qualified immunity from liability in connection with the search. Qualified immunity shields police officers and other government officials form liability so long as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223 (2009). A qualified immunity inquiry involves two questions: whether the defendant in question violated a constitutional (or federal statutory) right, and whether that right was clearly established at the time of the defendant's conduct. *Id.* If either inquiry is resolved in the negative, i.e., if the defendant did not violate the plaintiff's constitutional right, or if the right in question was not clearly established, the defendant is entitled to qualified immunity. *Id.*

The test for qualified immunity is meant to be highly deferential to government officials, protecting "all but the plainly incompetent or those who knowingly violate the law." *Humprey v. Mabry,* 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). In keeping with that high degree of deference, the official in question is entitled

to qualified immunity unless the right is so clearly established that *every reasonable official* would have understood that his or her conduct violated an individual's constitutional right. *Dist. of Columbia v. Wesby,* 138 S.Ct. 577 (2018); *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011); *Ryan v. Blackwell,* 979 F.3d 519 (6th Cir. 2020); *Hart v. Hillsdale County*, 973 F.3d 627 (6th Cir. 2020); *Meadows v. Enyeart,* 2015 Fed. App. 0627N at *11 (6th Cir.); *Gradisher v. City of Akron*, 794 F.3d 574, 583 (6th Cir. 2015); *Webb v. United States,* 789 F.3d 647, 659 (6th Cir. 2015); *Meeks v. Larsen,* 611 Fed. Appx. 277, 282 (6th Cir. 2015); *Bolick v. City of E. Grand Rapids,* 580 Fed. Appx. 314, 322 (6th Cir. 2014).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby, supra*. While there does not have to be a "case directly on point, … existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft, supra.* At the very least, "there must either be controlling authority or a robust consensus of cases of persuasive authority." *Guertin v. Michigan,* 912 F.3d 907 (6th Cir. 2019), citing *Plumoff v. Rickard,* 572 U.S. 765 (2014). And, "[i]t is not enough that the rule is *suggested* by then-existing precedent." *Wesby, supra*. Rather, existing precedent must have placed the constitutional question beyond debate, so that the court may call the rule well-settled. *Id.* After all, "the focus [of a qualified immunity inquiry] is on whether the officer had fair notice that his conduct was unlawful." *Kisela v. Hughes,* 138 S.Ct. 1148 (2018).

Critically, the "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances* before him. *Id.* the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Moderwell v. Cuyahoga*

11

*County*, 997 F.3d 653 (6th Cir. 2021), quoting *Wesby, supra*. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established. *Id.* "Qualified immunity, after all, must give government officers breathing room to make reasonable but mistaken judgments." *Barnett v. Smithwick,* 835 Fed. Appx. 31 (6th Cir. 2020), citing *Kent v. Oakland County,* 810 F.3d 384 (6th Cir. 2016).

"Obvious" cases – in which the unlawfulness of an officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances – are "rare." *Wesby, supra; Moderwell, supra; Hart, supra.* "[A] body of relevant case law is usually necessary to clearly establish" a rule governing officers' conduct. *Wesby, supra.* Thus, to defeat qualified immunity, the "plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires.'" *Arrington-Bey v. City of Bedford Heights,* 858 F.3d 988 (6th Cir. 2017). "Without such a case, a plaintiff will almost always lose." *Howse v. Hodous,* 953 F.3d 402 (6th Cir. 2020).

Here, there is no clearly established body of case law holding that a police officer violates a subject's rights under the Fourth Amendment by briefly inserting "part of his finger" into a subject's rectum in a manner that causes no injuries, in an effort to recover drugs hidden on or inside the subject's body.

### III. OFFICER ULLRICH IS ENTITLED TO SUMMARY JUDGMENT ON CUNDIFF'S CIVIL CONSPIRACY CLAIM

In Count III of his Complaint, Cundiff asserts a cause of action against Officer Ullrich for conspiring to violate his constitutional rights, in violation of 42 U.S.C. § 1985(3). (R.1 Complaint at PageID 6)

To avoid turning § 1985(3) into a generic tort law covering any injury inflicted by two parties, the Supreme Court has interpreted § 1985(3) to require "some racial, or perhaps

12

otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Post v. Trinity Health-Michigan*, 44 F.4th 572 (6th Cir. 2022), citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971). Cundiff – who is Caucasian – does not allege that Officer Ullrich – who is also Caucasian – was motivated by any racial or class-based animus in subjecting him to a traffic stop, searching his vehicle, or searching his person. Because he cannot show the necessary racial or class-based animus, Cundiff's conspiracy claim fails.

Assuming *arguendo* Cundiff could clear the hurdle of demonstrating race- or class-based animus, he still cannot establish the elements of a conspiracy. To establish a conspiracy, a plaintiff must establish that two or more persons developed a single plan, that the alleged co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Smith v. Thornburg*, 136 F.3d 1070 (6th Cir. 1998). As there is only one defendant, there is no co-conspirator here. Moreover, Cundiff has no evidence that Officer Ullrich shared a conspiratorial objective with anyone to deprive Cundiff of his constitutional rights.

For these reasons, Officer Ullrich is entitled to summary judgment on Count III of his Complaint.

**IV.   OFFICER ULLRICH IS ENTITLED TO SUMMARY JUDGMENT ON CUNDIFF'S FIRST AMENDMENT RETALIATION CLAIM**

In Count IV of his Complaint, Cundiff alleges that Officer Ullrich retaliated against him for making a statement that is protected by the First Amendment. Cundiff alleges that he made a statement expressing "displeasure with an officer" when he said "you don't gotta be a dick sucker" to Officer Ullrich, and that, upon hearing the statement, Officer Ullrich removed Cundiff from his vehicle, placed him in handcuffs, and subjected him to a search for

13

which there was no probable cause. (Exh. 3at 6:17:57 – 6:18:02; R.1 Complaint at PageID 6 – 7)

A First Amendment retaliation claim has three elements: (1) the plaintiff must have engaged in conduct that is protected under the First Amendment; (2) the defendant must have taken adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Myers v. City of Centerville*, 41 F.4th 746 (6th Cir. 2022).

The third element requires the plaintiff to establish a causal connection between retaliatory animus and an injurious action. *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006), citing *Crawford-El v. Britton*, 523 U.S. 574 (1998). A plaintiff cannot establish such a causal connection where the defendant's actions were justified by the existence of probable cause. *Hartman*, *supra*, citing *Mt. Health City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). <u>See also</u> *Barnes v. Wright*, 449 F.3d 709, 719-20 (6th Cir. 2006). Thus, to state a successful First Amendment retaliation claim under § 1983 based upon the search of his person, Cundiff must prove the absence of probable cause for the search. But, as demonstrated, probable cause for the search existed, a finding which is fatal to Cundiff's claim.

Alternatively, Officer Ullrich is entitled to qualified immunity on Cundiff's First Amendment retaliation claim. No clearly established law prohibited his conduct in the particular circumstances before him. *Kisela, supra.* Indeed, Cundiff cannot identify a case with a similar fact pattern that would have given "fair and clear warning to officers" about

14

what the law requires. *Arrington-Bey, supra.* As such, Plaintiff's First Amendment claim must be dismissed.

## V. CONCLUSION

Having demonstrated that the material facts are undisputed and that he is entitled to judgment as a matter of law, Officer Ullrich respectfully requests that the Court grant his summary judgment in his favor on all the claims asserted against him in the Complaint.

Respectfully submitted,

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
Jennifer L. Langen, Esq. (#87960)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY 41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
jlangen@adamsattorneys.com

*Attorneys for Defendant, Douglas Ullrich, in his individual capacity as a Covington, Kentucky Police Officer*

### CERTIFICATE OF SERVICE

I hereby certify that on this **30th** day of November, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Christopher D. Roach, Esq. and Benjamin T.D. Pugh, Esq.

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq.