UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00072

| | | |
|---|---|---|
| **JEFFREY CUNDIFF** | ) | **PLAINTIFF** |
| | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **DOUGLAS ULLRICH, et al.,** | ) | **DEFENDANTS** |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Jeffrey Cundiff through counsel, hereby moves for summary judgment against Defendant in relation to his Fourth Amendment Unlawful Search Claims.

### INTRODUCTION.

On June 8, 2020, Defendant Ullrich pulled over Plaintiff for running a stop sign. Through the course of the traffic stop, Defendant Ullrich escalated the stop to include a partial strip search and body cavity search of Plaintiff. The basis for the "probable cause" to perform the search was an "unrecoverable" amount of marijuana shake and a single marijuana seed found in his passenger's purse. While Plaintiff testified that Defendant penetrated Plaintiff's rectum during the course of the body cavity search, this motion is based on Defendant Ullrich's testimony regarding the events leading up to the search and the search itself, as Defendant Ullrich denies penetrating or touching Plaintiff's rectum.

Defendant Ullrich testified that he performed a search for contraband on Plaintiff's person after the location of the shake and single seed. Defendant Ullrich reached his gloved hands under the underwear of Plaintiff and used the back of his straight hand to search Plaintiff's butt-crack from top to bottom. (R. 30, Page ID# 146-150). Defendant Ullrich also testified that he then

1

reached around the front of Plaintiff and ran his hand under Plaintiff's underwear, along the seam between Plaintiff's leg and groin, searched behind Plaintiff's penis and scrotum, and back up the seam of the other leg. Id. There is no doubt that in the course of this search, Defendant Ullrich moved Plaintiff's penis and scrotum to check behind them. (R. 30, Page ID#148).

After finding no evidence of contraband on Plaintiff, Defendant Ullrich stated. "he won the game of 'I want it more.' It's far enough in him that I can't find it." (R. 30, Page ID# 149). Defendant Ullrich then completed his citation against Plaintiff for running a stop sign and released him from custody. Plaintiff spent roughly thirty minutes in handcuffs while the searches were performed and was ultimately note arrested for the running a stop sign offense.

## UNCONTESTED FACTS

On July 8, 2020, just after 2:00 a.m., Defendant Ullrich initiated a traffic stop of Plaintiff for running a stop sign. (R. 28-2, Uniform Citation, Page ID# 101). Defendant got out of his cruiser, walked to the passenger side of Plaintiff's vehicle, and instructed Plaintiff to roll the car's windows down and turn the car off. (R. 28-1, Ullrich Body Worn Camera Video, Conventionally Filed, at 6:13:41 to 6:13:51; R. 28-3, Ullrich Body Worn Camera Video, Conventionally Filed, at 6:13:23 to 6:13:58). During the course of the stop, Defendant asked Plaintiff's passenger, Sprague, to step out of the vehicle. (R. 28-3, at 6:16:15 to 6:16:28). Defendant then asked Plaintiff to step out of the vehicle, cuffed him, and patted him down. (R. 28-3, at 6:18:10 to 6:19:18).

During this time, Officer Mark Richardson arrived and performed a search using his dog aka drug detection canine aka K9. (R. 32, Richardson Depo., Page ID# 250). Officer Richardson interpreted his K9's actions as having alerted to the presence of narcotics. (R. 32, Page ID# 241-243). Allegedly, either marijuana shake, or a marijuana seed, or both, were found by Officer Richardson and Officer Denny, but not preserved as evidence, although Defendant Ullrich never

saw either. (R. 30, Page ID#140-141). Defendant then began a search of Plaintiff. (R. 30, Page ID# 142).

Defendant told Plaintiff to spread his feet apart so that if anything was concealed between his thighs, it would fall to the ground. (R. 30, Page ID# 144). During the search, Plaintiff's butt cheeks were clearly visible on the body worn camera. (R. 28-3, at 6:41:26). Defendant insists that Plaintiff is "squeezing his ass cheeks together like [he] was hiding something." (R. 28-3, at 6:41:26 to 6:41:50). Plaintiff insists that he is not hiding anything inside of himself. (R. 28-3, at 6:42:30). Officer Ullrich performed a search under Plaintiff's underwear on his back side, (R. 30, Page ID# 146). Officer Ullrich also searched the front side of Plaintiff under his underwear. (R. 30, Page ID# 148). Defendant Ullrich reached his gloved hands under the underwear of Plaintiff and used the back of his straight hand to search Plaintiff's butt-crack from top to bottom. (R. 30, Page ID# 146-150). Defendant Ullrich denies ever making contact with Plaintiff's rectum with his gloved hand, but does not deny that he ran his hand down Plaintiff's butt-cheeks from top to bottom. (R. 30, Page ID# 146-47). During this search, Defendant was looking into Plaintiff's underwear while he was pulling Plaintiff's underwear out. (R. 30, Page ID# 147; R. 28-3, 6:41:26 to 6:42:18).

Defendant Ullrich also testified that he then reached around the front of Plaintiff and ran his hand under Plaintiff's underwear, along the seam between Plaintiff's leg and groin, searched behind Plaintiff's penis and scrotum, and back up the seam of the other leg. (R. 30, Page ID# 146-150).  There is no doubt that in the course of this search, Defendant Ullrich moved Plaintiff's penis and scrotum to check behind them. (R. 30, Page ID#148). In his normal practice he goes along the seam between the leg and groin, move the scrotum and penis out of the way to check underneath them, and come up the other side. (R. 30, Page ID# 148). In performing the search behind the scrotum, Defendant Ullrich was manipulating the scrotum. (R. 30, Page ID# 149). After finding

3

no evidence of contraband on Plaintiff, Defendant Ullrich stated. "he won the game of 'I want it more.' It's far enough in him that I can't find it." (R. 30, Page ID# 149). Ultimately, Plaintiff was not arrested, but cited for running a stop sign. (R. 28-2, Page ID# 101).

## ARGUMENT

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. U.S. Const. amend. IV. Searches that intrude into the body implicate greater constitutional concerns. *See Schmerber v. California*, 384 U.S. 757, 770 (1966) ("Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned."). A warrantless search of a person's body implicates the "most personal and deep-rooted expectations of privacy," *Winston v. Lee*, 470 U.S. 753, 760 (1985), and is reasonable only if it falls within one of the Fourth Amendment's exceptions, *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013). A warrantless search of a person is reasonable only if it falls within a recognized exception. See, e.g., *United States v. Robinson*, 414 U.S. 218, 224 (1973).

This Court and the Sixth Circuit applied the *Bell* balancing factors to determine whether a particular search of suspect's person was unconstitutional:

> Bell mandates that we "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" when assessing whether an intrusive search is unreasonable and thus violative of the Fourth Amendment. Id. at 559, 99 S.Ct. 1861.

*United States v. Jackson*, 801 Fed. Appx. 941 (6th Cir. 2020).

The nature of the intrusion in this case is far more significant than Officer Ullrich's intrusion in Jackson. First, the search was performed outside on a street lined with houses and while Plaintiff surrounded by at least eight other officers including a female officer standing behind Plaintiff. The search lasted much longer than the search in Jackson, and even by Defendant Ullrich's testimony was significantly more intrusive. Like *Amaechi*, the search of Plaintiff involved characteristics of both a strip search and body cavity search. *See Amaechi v. West*, 237 F.3d 356, 363-64 (4th Cir. 2001). Defendant Ullrich's search of Plaintiff begins at time stamp 6:41:06 and continues to time stamp 6:42:08 of his dashcam video. (Exhibit 1- Dashcam Video). In the course of roughly one minute of hands-on searching, Defendant Ullrich admits to looking down the back of Plaintiff's underwear, running his hand up Plaintiff's butt-crack from top to bottom, moving Plaintiff's penis and scrotum to check behind them, and admits to manipulating Plaintiff's scrotum. (R. 30, Page ID# 146-150). In addition to Defendant Ullrich, another officer is close by shining a light to illuminate the Plaintiff's back-side while Defendant Ullrich searched. (See Exhibit 1- Dashcam Video) (filed conventionally).

Unlike Jackson, where Ullrich pulled Jackson's pants straight out and within five seconds looked into then pulled out the package of methamphetamine within five seconds, this search took close to a minute, involved physical manipulation of Plaintiff's genitalia and buttocks, and included at least a partial strip search witnessed by other officers. Additionally, Plaintiff was not under arrest at the time of the search. Unlike Jackson, Plaintiff was not on parole or probation and was charged only with running a stop sign. While Plaintiff also claims that his rectum was actually penetrated during the search, he is not arguing that fact in this motion as Defendant Ullrich denies ever doing so. Even without this fact, Defendant Ullrich's search of Plaintiff constituted both a partial strip search and a manual body-cavity search.

In *Sowders*, the Sixth Circuit looked to the First Circuit for descriptions of the three types of nude body searches.

> A "strip search," though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities. Blackburn, 771 F.2d at 561 n. 3; cf. Bell, 441 U.S. at 558 n. 39, 99 S.Ct. at 1884 n. 39 (emphasizing that search of prisoner was a visual one but not a manual one).

*Spear v. Sowders*, 433 F.3d 576, 634 (6th Cir. 1995). The search conducted by Defendant Ullrich invaded Plaintiff's privacy rights beyond that of a visual search. *See United States v. Doxey*, 833 F.3d 692, 705 (6th Cir. 2016) (stating "There is no question in this case that Trooper Marshall's flicking a baggie from in-between Doxey's buttocks invaded Doxey's privacy interests beyond that of a visual search.").

Finally, the reason for the search was to locate suspected drugs that Defendant Ullrich believed that Plaintiff had hidden in his rectum. His reason for this belief was the thirty seconds that it took for Plaintiff to come to a stop, Plaintiff's movements during that time inside the car, Plaintiff name dropping his boss, Plaintiff becoming belligerent, and reaching to his waistband when he got out of the car. (R. 30- Ullrich Depo. at Page ID#133-37). Beyond these factors, Defendant Ullrich does not have an independent recollection of any other factors. (Id. at Page ID# 137).

However, there is video evidence that contradicts the most of these factors. First, the total amount of time that it took Plaintiff to come to a complete stop was roughly 30 seconds at slow speed. (Id. at Page ID# 134). This entire period is captured on dash cam, and careful review of those thirty seconds show little to no movement by either Plaintiff or his passenger. (Exhibit 1- Dashcam; 6:12:56- 6:13:58). The body worn camera of Defendant Ullrich also belies his statement

6

that Plaintiff became belligerent. In fact, Plaintiff's demeanor is generally calm and at some point after Defendant Ullrich states that he does not know Plaintiff's boss, Plaintiff simply states in calm voice, "you don't gotta be a dick sucker man" after Defendant became aggressive with him. (R. 28-5- Ullrich BWC, Timestamp 6:13:45- 6:18:03). During the entire stop, Plaintiff is calm and collected and appears readily to be trying to comply and anticipate Defendant's requests. When Plaintiff exits the vehicle, he instinctively reaches to make sure his shirt is pulled down and not riding up his torso. (Exhibit 1- Dash Cam at 6:18:23-6:18:27).

Here, the video evidence of record establishes that at most Defendant Ullrich's only probable cause that Plaintiff had hidden contraband at this point in the stop is that it took roughly 30 seconds to complete the stop. The Supreme Court has held that, where a party's account is "blatantly contradicted" by video footage, "so that no reasonable jury could believe it," a court should not adopt that version of events for summary judgment purposes. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In total, at the time that Defendant Ullrich performed his highly invasive search of Plaintiff, he had reports of a marijuana seed and unrecoverable shake being found in the passenger's purse and the length of the time it took Plaintiff to stop to bring him to the conclusion that Plaintiff had hidden illegal drugs in his rectum.

The scope of the particular intrusion on Plaintiff was severe. He was subjected to at least a partial strip search by Defendant and at least eight officers in the vicinity and had his genitalia and but crack fondled for close to a minute while in a residential neighborhood with houses nearby and after Defendant had blasted his air horn. This was not a search conducted at a police station or at a jail after arrest. Plaintiff was never arrested but was rather temporarily detained. Ultimately the justification for the search was the 30 seconds it took Plaintiff to stop and the discovery of an unrecoverable amount of marijuana shake and a single marijuana seed found in his passenger's

7

purse. All of the Bell factors weigh heavily in favor of Plaintiff. Therefore, Plaintiff respectfully requests that the Court find that the intrusive search conducted by Defendant Ullrich was objectively unreasonable in violation of the Fourth Amendment and grant summary judgment on his claims as it relates to these uncontested facts.

Respectfully submitted,

s/ Christopher D. Roach
Christopher D. Roach (95007)
Benjamin T.D. Pugh (94032)
PUGH & ROACH, ATTORNEYS AT LAW, PLLC
28 West Fifth Street
Covington, KY 41011
859.291.5555
chris@prlaw.legal; tom@prlaw.legal

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2022, a copy of the foregoing notice was served upon all counsel of record via the Court's CM/ECF system.

/s/ Christopher D. Roach
Christopher D. Roach

8