UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00072-DLB

**JEFFREY CUNDIFF**                                                            **PLAINTIFF**

**v.**

**DOUGLAS ULLRICH,** *et al.*                                      **DEFENDANTS**

**RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Douglas Ullrich, by and through counsel, respectfully submits this Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. (Doc. 33)

**I.  STATEMENT OF FACTS**

Just after 2:00 a.m. on July 8, 2020, Covington Police Officer Douglas Ullrich was patrolling in Covington, Kentucky, near St. Elizabeth Hospital. Immediately after he turned from James Simpson Way onto Kavanaugh Street heading southbound, he noticed Jeffrey Cundiff's gold Nissan Altima pull away at a high rate of speed in a residential area and blow through a stop sign at the intersection of Kavanaugh and 14th Streets. (Doc. 28-2, Uniform Citation at PageID 101; Doc. 29, Def. MSJ Exh. 1 Ullrich BWC at 6:12:27 – 6:12:40[1])

According to Cundiff's passenger, Megan Sprague, Cundiff had "definitely" taken drugs on the evening of July 8, 2020, and both she and Cundiff were both high on drugs when they were driving through the streets of Covington at 2:00 a.m. (Sprague Depo., p. 11 – 13)

Officer Ullrich activated his cruiser's overhead flashing lights to initiate a traffic stop. (Doc. 29, Def. MSJ Exh. 1 at 6:12:56; Doc. 29, Def. MSJ Exh. 3 Ullrich BWC at 6:12:56) It took

---

[1] A thumb drive containing Defendant's Motion for Summary Judgment Exhibits 1, 3, 5 and 7 was filed with the Court conventionally. (*See* Docs. 29, 35)

1

approximately 30 seconds for Cundiff to stop, even though Officer Ullrich had also engaged his siren and air horn in that time. (Doc. 29, Def. MSJ Exh. 1 at 6:12:56 – 6:13:20; Doc. 29, Def. MSJ Exh. 3 at 6:12:56 – 6:13:22) Additionally, since there were no other cars traveling on the road at that time, and since Officer Ullrich was, by this time, immediately behind Cundiff's Nissan Altima, there could not have been any confusion as to which car Officer Ullrich was trying to pull over. (Doc. 29, Def. MSJ Exh. 1 at 6:12:56 – 6:13:20)

In the 30 seconds it took Cundiff to stop, Officer Ullrich thought he discerned Cundiff moving inside his car, reaching toward Sprague, lifting himself up off the driver's seat, and reaching underneath himself. (Doc. 30, Ullrich Depo. at PageID 130, 134) To Officer Ullrich, who is certified by the International Association of Chiefs of Police (IACP) as well as by the National Highway Traffic Safety Administration (NHTSA) as a drug recognition expert, Cundiff's movements and his delay in pulling over suggested that Cundiff had hidden drugs on his person or inside a body cavity. (Doc. 28-4, Ullrich CV at PageID 103; Doc. 30, Ullrich Depo. at PageID 130)

Once Cundiff stopped, Officer Ullrich got out of his cruiser, walked to the passenger side of Cundiff's vehicle, and instructed Cundiff to roll the car's windows down and turn the car off. (Doc. 29, Def. MSJ Exh. 1 at 6:13:41 – 6:13:51; Doc. 29, Def. MSJ Exh. 3 at 6:13:23 – 6:13:58) Because Cundiff was slow to comply, Officer Ullrich had to repeat these instructions before telling Cundiff to remove the keys from the ignition and hand them to Sprague. (Doc. 29, Def MSJ Exh. 3 at 6:13:48 – 6:14:04)

Without being asked, Cundiff volunteered: "'I work for the City of Covington." (Doc. 29, Def. MSJ Exh. 3 at 6:14:04 – 6:14:08) Officer Ullrich perceived that statement as an attempt by Cundiff to secure favorable treatment during the traffic stop. (Doc. 30, Ullrich

2

Depo. at PageID 127 – 128, 134) Officer Ullrich explained he had pulled Cundiff over because he had observed Cundiff "flying" through a stop sign at 40 miles per hour without stopping. (Doc. 29, Def. MSJ Exh. 3 at 6:14:09 – 6:15:27) Officer Ullrich next requested driver's licenses from Cundiff and Sprague. (Doc. 29, Def. MSJ Exh. 3 at 6:14:09 – 6:15:27) As he retrieved his wallet, Cundiff repeated that he worked for the City of Covington. (Doc. 29, Def. MSJ Exh. 3 at 6:14:54 – 6:15:12)

After securing and reviewing their operators' licenses, Officer Ullrich asked Sprague to step out of the car, and she complied. (Doc. 29, Def. MSJ Exh. 3 at 6:16:15 – 6:16:28)

After Sprague got out of the vehicle, Officer Ullrich spoke with Cundiff. (Doc. 29, Def. MSJ Exh. 3 at 6:17:42 – 6:17:47) During their conversation, Officer Ullrich told Cundiff he had observed Cundiff moving around inside the car before Cundiff stopped his car. Cundiff responded, "Well, you don't gotta be a dick sucker." (Doc. 29, Def. MSJ Exh. 3 at 6:17:57 – 6:18:02) Eventually, Officer Ullrich asked Cundiff to get out of the car and handcuffed him. He did so because Cundiff's reaching around inside the car made Officer Ullrich worry that Cundiff could have access to a weapon. (Doc. 29, Def. MSJ Exh. 3 at 6:18:10 – 6:19:02)

Once handcuffed, Officer Ullrich conducted a routine pat-down search of Cundiff's person, using his gloved hands to feel along Cundiff's legs and pelvic region on the outside of his clothing, before escorting him to the curb to sit near Sprague. (Doc. 29, Def. MSJ Exh. 1 at 6:18:46 – 6:19:13; Doc. 29, Def. MSJ Exh. 3 at 6:18:45 – 6:19:18) Cundiff has no complaints about the manner in which the brief pat down search was conducted. (Doc. 31, Cundiff Depo. at PageID 181)

While Cundiff and Sprague were on the curb, Officer Ullrich went to his cruiser to run background checks. Doc. 29, Def. MSJ Exh. 3 at 6:19:18 – 6:25:08)

In the meantime, Officer Mark Richardson, arrived on the scene with Zino, his drug detection canine. (Doc. 32, Richardson Depo. at PageID 213) Officer Richardson escorted Zino around the perimeter of Cundiff's vehicle, an occurrence that was recorded by at least two cameras. Doc. 29, Def. MSJ Exh. 1 at 6:20:14 – 6:20:52; Doc. 29, Def. MSJ Exh. 3 at 6:18:47 – 6:18:51; Doc. 29, Def. MSJ Exh. 5 at 6:20:20 – 6:21:03) As they walked the perimeter of the vehicle, Zino jumped up at the driver's window. Then, as he walked past the seam of the driver's side rear door, he stopped, turned back, and made his body rigid with his nose on the vehicle. (Doc. 28-6, Deployment Report at PageID 110; Doc. 29, Def. MSJ Exh. 3 at 6:20:41 – 6:20:50; Doc. 29, Def. MSJ Exh. 5 at 6:20:48 – 6:20:56) Based on his extensive training and experience in handling drug detection canines generally and Zino specifically, Officer Richardson interpreted Zino's actions as "alerts" to the presence of narcotic odor. (Doc. 32, Richardson Depo. at PageID 241 – 243, 250 – 254)

Officer Richardson advised Cundiff he believed there was probable cause to search his vehicle based on the canine's alerts, to which Cundiff responded, "that's fine." (Doc. 29, Def. MSJ Exh. 5 at 6:22:50) Hence, Officer Richardson, assisted by other officers, methodically searched Cundiff's car. (Doc. 29, Def. MSJ Exh. 5 at 6:22:56 – 6:39:32) During the search, an officer located marijuana shake (i.e., seed), but no other drugs were located in the vehicle. (Doc. 29, Def. MSJ Exh. 5 at 6:38:44 – 6:38:50)

Once Officer Richardson completed his search of Cundiff's car, Officer Ullrich searched Cundiff. Before doing so, Officer Ullrich helped Cundiff from a seated position on the curb and escorted him to the area in front of Officer Ullrich's cruiser so the search would be captured by the cruiser camera. (Doc. 29, Def. MSJ Exh. 3 at 6:40:45 – 6:40:59) He told Cundiff to spread his feet apart because that would dislodge anything Cundiff might have

4

tucked between his thighs and would have made it more difficult for Cundiff to fight or run. (Doc. 30, Ullrich Depo. at PageID 144) As Officer Ullrich began his search, he instructed Cundiff to "unclench" his muscles because his "entire body was locked up. He was squeezing incredibly hard." (Doc. 30, Ullrich Depo. at PageID 145) Officer Ullrich ran his hands along Cundiff's waistband and down the inside front and inside back of Cundiff's underwear. (Doc. 29, Def. MSJ Exh. 1 at 6:40:59 – 6:42:32; Doc. 29, Def. MSJ Exh. 3 at 6:40:59 – 6:42:32) In conducting this search, Officer Ullrich used "a bladed hand to go down the length from the top of the cleft, ridge, whatever you want to call it, but his butt crack, down to the bottom of it, to see if there was anything inside his cheeks that he was trying to hide." (Doc. 30, Ullrich Depo. at PageID 147) Officer Ullrich also ran his hand along the seam between Cundiff's hip and groin on one side to determine whether there was anything lodged in that seam; used his hand to check under Cundiff's scrotum, moving Cundiff's scrotum and penis out of the way in order to do so; and, ran his hand along the seam between Cundiff's hip and groin on the other side. (Doc. 30, Ullrich Depo. at PageID 148) During this entire process, which took less than one minute, Cundiff remained fully clothed, such that no one other than Officer Ullrich and the unidentified officer who stood next to him holding a flashlight could see any private area of Cundiff's body; and, Officer Ullrich and the officer holding the flashlight could only see a portion of Cundiff's rear end. (Doc. 29, Def. MSJ Exh. 1 at 6:40:59 – 6:42:32; Doc. 29, Def. MSJ Exh. 3 at 6:40:59 – 6:42:32)

      Officer Ullrich did not find any drugs on Cundiff during this search, and he elected not to pursue a warrant for a body cavity search because, in his experience, such warrants are rarely granted absent extreme circumstances. (Doc. 30, Ullrich Depo. at PageID 153)

5

Officer Ullrich instructed another officer to escort Cundiff to the sidewalk to sit next to Sprague. (Doc. 29, Def. MSJ Exh. 3 at 6:42:30 – 6:42:45) After Officer Ullrich issued Cundiff a citation for disregarding a stop sign and removing the handcuffs, Cundiff left the scene with Sprague. (Doc. 29, Def. MSJ Exh. 3 at 6:45:01 – 6:46:31)

Cundiff filed this action on June 7, 2021. Pursuant to 42 U.S.C. § 1983, Cundiff asserts causes of action against Officer Ullrich under the First and Fourth Amendments, as well as a cause of action under § 1985 for civil conspiracy. (R.1 Complaint at PageID 1 – 8) He has filed a motion seeking summary judgment on his Fourth Amendment claim, which is premised on the allegedly unconstitutional search Officer Ullrich conducted of his person.

For the reasons that follow, Cundiff is not entitled to summary judgment on his Fourth Amendment claim.

**II.   THE SEARCH CONDUCTED BY OFFICER ULLRICH DID NOT VIOLATE CUNDIFF'S FOURTH AMENDMENT RIGHTS**

With respect to the search of a suspect's person, courts are to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" when assessing the reasonableness of the search. *United States v. Jackson*, 801 Fed. Appx. 941 (6th Cir. 2020), quoting *Bell v. Wolfish*, 441 U.S. 520 (1979).

In *Jackson*, the Sixth Circuit considered the constitutionality of a search officer Ullrich conducted of another suspect under circumstances similar to those in the present case. Specifically, in *Jackson*, officer Ullrich initiated a traffic stop of the suspect after watching the suspect pull away from a curb and make two turns without utilizing his turn signal and requested that an officer with a drug detection canine arrive at the scene to walk the perimeter of the vehicle. Nine minutes later, a drug detection canine arrived and alerted to

6

narcotics during a search of the perimeter of the suspect's car. Officer Ullrich then conducted a search of the suspect's person by patting down the front of the suspect's body, including his groin area. In so doing, Officer Ullrich unbuckled the suspect's belt, unzipped the suspect's pants, and pulled the suspect's pants straight away from his body with one hand while placing his hand down into the suspect's groin, removing a parcel of methamphetamine the suspect had lodged in that area. During the search, the suspect's pubic hair and buttocks were partially exposed to four onlookers at street-level and two persons watching from their windows.

Under those circumstances, the Court said the scope of the "moderately intrusive" search weighed in Officer Ullrich's favor because the search was not longer than necessary to serve its purpose: "Once the suspected drugs were seized, Ullrich terminated the search. Thus, we conclude that the scope of the search was reasonable." *Id.* at 947. The Court also ruled the manner in which the scope was conducted was reasonable:

> "The search was brief, and while it occurred on a public street, the record establishes that it was a dark night, and the only other persons present were 50 or 60 feet away. The officers did not strip Jackson of his clothes, visually inspect his body cavities, penetrate his body, or forcibly expose private areas of Jackson's body for prolonged time. … In sum, based on the totality of circumstances, we conclude that Officer Ullrich's search of Jackson … was reasonable under the Fourth Amendment." *Id.*

Likewise, Officer Ullrich's search of Cundiff was reasonable. Although the search of Cundiff took a little more time than the search in *Jackson*, it was still brief (i.e., not longer than one minute) and it still was not longer than necessary to accomplish its purpose (i.e., to locate and retrieve any drugs Officer Ullrich reasonably suspected Cundiff had hidden on his person). And, the manner in which Officer Ullrich searched Cundiff was no more intrusive than the search in *Jackson*. Officer Ullrich did not remove Cundiff's clothes, visually inspect

7

his body cavities, penetrate his body, or expose the private areas of Cundiff's body to anyone. Further, while the search was conducted on a public street, it was so dark outside (given the hour) that even Officer Ullrich could not see without the benefit of a flashlight. There were no bystanders, like there were in *Jackson*. Based on the totality of circumstances, Officer Ullrich's search of Cundiff was not unreasonable.

Because Officer Ullrich's search of Cundiff was not unreasonable, Cundiff is not entitled to summary judgment on his Fourth Amendment claim.

### III.  ASSUMING *ARGUENDO* THE SEARCH WAS UNREASONABLE, OFFICER ULLRICH IS ENTITLED TO QUALIFIED IMMUNITY

Assuming *arguendo* the search was unreasonable, Officer Ullrich is entitled to qualified immunity. Officer Ullrich raised the defense of qualified immunity in his Answer. (R.6 Answer at PageID 29) To succeed on his motion for summary judgment, Cundiff has the burden of demonstrating both the unconstitutionality of Officer Ullrich's conduct *and* that Officer Ullrich is not entitled to qualified immunity. *Burton v. City of Detroit*, 2022 U.S. App. LEXIS 32566 (6th Cir.) ("when a government official claims qualified immunity, a plaintiff bears the burden of overcoming qualified immunity"); *Zawada v. Hogan*, 2022 U.S. App. LEXIS 30611 (6th Cir.) ("Once asserted, the plaintiff has the burden to show that the defendant is not entitled to qualified immunity.")

Qualified immunity shields police officers and other government officials from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009). A qualified immunity inquiry involves two questions: whether the defendant in question violated a constitutional (or federal statutory) right, and whether that right was clearly established at the time of the defendant's conduct. *Id.* If either inquiry is

8

resolved in the negative, i.e., if the defendant did not violate the plaintiff's constitutional right, or if the right in question was not clearly established, the defendant is entitled to qualified immunity. *Id*.

The test for qualified immunity is meant to be highly deferential to government officials, protecting "all but the plainly incompetent or those who knowingly violate the law." *Humprey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In keeping with that high degree of deference, the official in question is entitled to qualified immunity unless the right is so clearly established that every reasonable official would have understood that his or her conduct violated an individual's constitutional right. *Dist. of Columbia v. Wesby*, 138 S.Ct. 577 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020); *Hart v. Hillsdale County*, 973 F.3d 627 (6th Cir. 2020); *Meadows v. Enyeart*, 2015 Fed. App. 0627N at *11 (6th Cir.); *Gradisher v. City of Akron*, 794 F.3d 574, 583 (6th Cir. 2015); *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015); *Meeks v. Larsen*, 611 Fed. Appx. 277, 282 (6th Cir. 2015); *Bolick v. City of E. Grand Rapids*, 580 Fed. Appx. 314, 322 (6th Cir. 2014).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, *supra*. While there does not have to be a "case directly on point, … existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, *supra*. At the very least, "there must either be controlling authority or a robust consensus of cases of persuasive authority." *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019), citing *Plumoff v. Rickard*, 572 U.S. 765 (2014). And, "[i]t is not enough that the rule is suggested by then-existing precedent." *Wesby*, *supra*. Rather, existing precedent must have placed the constitutional question beyond debate, so that the court may call the rule well-

9

settled. *Id*. After all, "the focus [of a qualified immunity inquiry] is on whether the officer had fair notice that his conduct was unlawful." *Kisela v. Hughes*, 138 S.Ct. 1148 (2018).

Critically, the "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. *Id*. The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Moderwell v. Cuyahoga County*, 997 F.3d 653 (6th Cir. 2021), quoting *Wesby*, *supra*. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established. *Id*. "Qualified immunity, after all, must give government officers breathing room to make reasonable but mistaken judgments." *Barnett v. Smithwick*, 835 Fed. Appx. 31 (6th Cir. 2020), citing *Kent v. Oakland County*, 810 F.3d 384 (6th Cir. 2016).

Cundiff is not entitled to summary judgment because he has not pointed to any precedent holding that a police officer violated a person's rights by searching the person in a manner similar to the way Officer Ullrich searched him. Cundiff argues only that Officer Ullrich violated his constitutional rights; he does not address whether the right at issue was "clearly established." Indeed, the only case on which Cundiff substantially relies is *Jackson*, and that case satisfies neither the unconstitutionality prong nor the clearly-established prong of the qualified immunity analysis. Moreover, in *Jackson*, the Court ruled the search at issue was constitutional. That being so, *Jackson* does not establish that Officer Ullrich, having conducted a similar search under similar circumstances in this case, violated Cundiff's rights. Further, it is impossible to tell from *Jackson* what the contours of the Fourth Amendment forbid in terms of searches, since the holding in that case ruled the search at issue

constitutional. As such, it provided no notice to Officer Ullrich that he would be engaging in unconstitutional conduct if he conducted a search like the one he conducted in this case.

Because Cundiff has not overcome Officer Ullrich's defense of qualified immunity, Cundiff is not entitled to summary judgment on his Fourth Amendment claim.

## IV. CONCLUSION

For the foregoing reasons, Cundiff's Motion for Partial Summary Judgment (Doc. 33) must be denied.

Respectfully submitted,

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
Jennifer L. Langen, Esq. (#87960)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY  41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
jlangen@adamsattorneys.com

*Attorneys for Defendant, Douglas Ullrich, in his individual capacity as a Covington, Kentucky Police Officer*

## CERTIFICATE OF SERVICE

I hereby certify that on **20th** day of December, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  Christopher D. Roach, Esq. and Benjamin T.D. Pugh, Esq.

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq.