UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00072

| | | |
|---|---|---|
| **JEFFREY CUNDIFF** | ) | **PLAINTIFF** |
| | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **DOUGLAS ULLRICH, et al.,** | ) | **DEFENDANTS** |

**PLAINTIFF'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

Plaintiff, Jeffrey Cundiff through counsel, hereby moves for summary judgment against Defendant in relation to his Fourth Amendment Unlawful Search Claims.

The nature of the intrusion in this case is far more significant than Officer Ullrich's intrusion in *Jackson*. First, the search was performed outside on a street lined with houses and while Plaintiff was surrounded by at least eight other officers including a female officer standing behind Plaintiff. The search lasted much longer than the search in *Jackson*, and even by Defendant Ullrich's testimony was significantly more intrusive.. Defendant Ullrich's search of Plaintiff begins at time stamp 6:41:06 and continues to time stamp 6:42:08 of his dashcam video. (R. 33-1- Dashcam Video). In the course of roughly one minute of hands-on searching, Defendant Ullrich admits to looking down the back of Plaintiff's underwear, running his hand up Plaintiff's butt-crack from top to bottom, moving Plaintiff's penis and scrotum to check behind them, and admits to manipulating Plaintiff's scrotum. (R. 30, Page ID# 146-150). Jackson involved a five second foray into the Defendant's underwear to obtain drugs that he had felt during the fully clothed search of a detainee that was on parole. *United States v. Jackson*, 801 Fed. Appx. 941 (6th Cir. 2020)

1

Such a search was not warranted by Defendant's justification for initiating the search. The reason for the search was to locate suspected drugs that Defendant Ullrich believed that Plaintiff had hidden in his rectum. His reason for this belief was the thirty seconds that it took for Plaintiff to come to a stop, Plaintiff's movements during that time inside the car, Plaintiff name dropping his boss, Plaintiff becoming belligerent, and reaching to his waistband when he got out of the car. (R. 30, Page ID#133-37). Beyond these factors, Defendant Ullrich does not independently recollect any other factors to justify the search as conducted. (Id. at Page ID# 137)

Contrary to Defendant's statements and arguments, Defendant's dashcam video shows that Plaintiff pulled over roughly 30 seconds after Defendant turned on his emergency lights and that no furtive movements can be seen inside the vehicle during any time. The Supreme Court has held that, where a party's account is "blatantly contradicted" by video footage, "so that no reasonable jury could believe it," a court should not adopt that version of events for summary judgment purposes. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendant further argues that 1) Plaintiff's "blowing through a stop sign," 2) Plaintiff's statements that they are on the same side, and 3) Plaintiff's change in attitude after Defendant's refusal to be influenced by Plaintiff's statements are all indications that Plaintiff "was guilty of something." (R. 28, Page ID#90-91). Defendant does not explain how any of these "facts" provide any additional basis for probable cause to search Plaintiff. Plaintiff's running of the stop sign at Kavanaugh and 14th street is the basis for the stop but provides no additional probable cause to believe that Plaintiff had committed or was in the process of committing any other crime. Even Plaintiff's statements that they are "on the same side" provide no additional basis for probable cause. Whether those statements were made with the purpose of obtaining a favorable outcome on

2

the stop or in response to Defendant Ullrich's behavior leading up to that moment, would have no bearing on the probable cause assessment.

Finally, the body-worn camera footage also clearly contradicts Defendant's argument that Plaintiff's attitude changed in response to Defendant's refusal to by influenced by Plaintiff's statements. Throughout the entire encounter up to the body cavity search, Plaintiff is calm and deliberate. With the exception of his statement that Defendant did not have to be a "dick-sucker about it," Plaintiff is also courteous with Defendant. It is clear from the body-worn camera, that Plaintiff's one discourteous statement was in relation to Defendant's attitude, which was rife with hostility during the entire encounter.

Zino, Officer Richardson's canine, alerts to the odor of narcotics. Just because an officer does not find drugs does not mean that drugs are not present and that the odor is not there. (R. 32, Page ID#227). Richardson found an uncollectible amount of marijuana in Megan Sprague's purse. Id. at Page ID# 243-44. He does not recall where he found the single marijuana seed. Id. Richardson did not collect the seed. Id. at Page ID# 245-46. Arguably, under the totality of the circumstances, the only probable cause to believe that Plaintiff may be concealing drugs on his person is limited to the marijuana shake found in Ms. Sprague's purse and the marijuana seed that was found either in the purse or in Plaintiff's vehicle. Neither of these would allow Plaintiff to be charged with anything more than a misdemeanor possession charge.

In addition to Defendant Ullrich, another officer is close by, shining a light to illuminate Plaintiff's backside while Defendant Ullrich searched. (See R.33-1- Dashcam Video)(filed conventionally). And there are at least 8 other officers present during the search. Id.; R. 28-5- Ullrich's BWC). Such actions have been clearly established to violate the fourth amendment rights of detainees since at least 1985. The Supreme Court has set down a strict rule for strip searches:

3

"to the extent that deeply intrusive searches are ever reasonable outside the custodial context, it surely must only be to prevent imminent, and serious harm." *New Jersey v. T.L.O.*, 469 U.S. 325, 382 n. 25 (1985).

Respectfully submitted,

s/ Christopher D. Roach
Christopher D. Roach (95007)
Benjamin T.D. Pugh (94032)
PUGH & ROACH, ATTORNEYS AT LAW, PLLC
28 West Fifth Street
Covington, KY 41011
859.291.5555
chris@prlaw.legal; tom@prlaw.legal

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, a copy of the foregoing notice was served upon all counsel of record via the Court's CM/ECF system.

/s/ Christopher D. Roach
Christopher D. Roach