UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 21-72-DLB-CJS

JEFFREY CUNDIFF                                          PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

DOUGLAS ULLRICH,
*in his individual and official capacities*                       DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

### I.    INTRODUCTION

This matter is before the Court upon cross-motions for summary judgment. Defendant's Motion for Summary Judgment (Doc. # 28) has been fully briefed (Docs. # 39 and 43), and Plaintiff's Motion for Partial Summary Judgment (Doc. # 33) has been fully briefed, as well. (Docs. # 36 and 40). Accordingly, both motions are ripe for adjudication. For the reasons otherwise stated herein, Defendant's Motion (Doc. # 28) is **granted in part and denied in part,** and Plaintiff's Motion (Doc. # 33) is **denied**.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a traffic stop conducted by the Covington Police Department on June 8, 2020, when Plaintiff Jeffrey Cundiff was pulled over by Officer Douglas Ullrich for running a stop sign. (Doc. # 1 at ¶ 2). According to Officer Ullrich, he observed Mr. Cundiff's vehicle "pull away at a high rate of speed in a residential area and blow through a stop sign at the intersection of Kavanaugh and 14th Streets." (Doc. # 28 at 3). When Officer Ullrich engaged his cruiser's lights and siren, Mr. Cundiff did not stop immediately.

(*Id*.).  Approximately 30 seconds later, Mr. Cundiff pulled over, but before then, Officer Ullrich allegedly observed Mr. Cundiff behaving suspiciously through Mr. Cundiff's back windshield: "moving inside his car, reaching toward [his passenger], lifting himself up off the driver's seat, and reaching underneath himself."  (*Id*. at 4).  However, Mr. Cundiff's passenger testified that she never saw Mr. Cundiff making any type of furtive movements, (Doc. # 39 at 2), and Mr. Cundiff states that he pulled over as quickly as he could, provided the residential area in which they were located.  (*Id*.).  Based on Officer Ullrich's observations, in addition to the time it took Mr. Cundiff to pull over, Officer Ullrich believed that Mr. Cundiff had concealed drugs on his person or inside his body – specifically, inside Mr. Cundiff's rectum.  (Doc. # 28 at 4).

After Mr. Cundiff stopped his vehicle and pulled over, Officer Ullrich approached the vehicle and instructed Mr. Cundiff to roll the car's windows down and surrender his keys.  (Doc. # 39 at 2).  During an initial exchange between Officer Ullrich and Mr. Cundiff, Mr. Cundiff remarked to Officer Ullrich, "You don't gotta be a dick sucker, man."  (*Id*. at 3).  Mr. Cundiff also told Officer Ullrich that he was an employee of the City of Covington, and that the two were on "the same team."  (*Id*.).  Officer Ullrich, seemingly annoyed at Mr. Cundiff's insult, retorted "Well, I'm a dick sucker, so you're probably not on my team."  (*Id*.).  Officer Ullrich ordered Mr. Cundiff to step out of the vehicle and placed Mr. Cundiff in handcuffs to conduct a pat-down for weapons.  (Doc. # 1 at ¶ 3-4).  Mr. Cundiff did not have any weapons, and he was ordered to sit on a nearby curb alongside the passenger in his vehicle.  (*Id.* at ¶ 5).

While Mr. Cundiff sat on the curb, another Covington Police officer conducted a canine sweep of Mr. Cundiff's vehicle.  (*Id.* at ¶ 6).  Mr. Cundiff believes that the canine

2

"either made no indication of . . . illegal narcotics or alternatively was trained in such a way that a positive indication for the presence of narcotics could be made even after those narcotics were removed from the location[.]"  (Doc. # 1 at ¶ 9).  Either way, the officers interpreted the canine's actions as alerting to the presence of drugs inside the vehicle.  (Doc. # 28 at 6).  The canine officer advised Officer Ullrich that he believed there was probable cause to search the vehicle, and Mr. Cundiff consented to the search, telling the officers "that's fine."  (*Id.*).  Officer Ullrich and other Covington Police officers on the scene conducted a thorough search of Mr. Cundiff's vehicle, but only located one marijuana seed in the passenger's purse.  (*Id.*; Doc. # 1 at ¶ 12).  No illegal drugs were located in an actionable amount beyond the single marijuana seed.  (*Id.*).

However, Officer Ullrich continued to believe that Mr. Cundiff had concealed drugs on or inside his body before pulling over his car, and Officer Ullrich proceeded to conduct a search of Mr. Cundiff's person.  (Doc. # 28 at 6; Doc. # 39 at 3).  Officer Ullrich assisted Mr. Cundiff in standing up from the curb he was sitting on and asked him to stand in front of his police cruiser.  (Doc. # 28 at 6).  Officer Ullrich then instructed Mr. Cundiff to stand with his feet apart, so that if anything was concealed between his thighs, it would fall so the ground.  (*Id.*; Doc. # 39 at 3).  Officer Ullrich then searched Mr. Cundiff's person around his waistband, and then placed his hands inside Mr. Cundiff's shorts, but over his underwear.  (Doc. # 39 at 3).

During the search, Officer Ullrich observed that Mr. Cundiff's body was tensed to the degree that "his entire body was locked up," as he later remarked to another officer that Mr. Cundiff was "squeezing his ass cheeks together like [he] was hiding something."  (Doc. # 28 at 6; Doc. # 39 at 3).  Officer Ullrich instructed Mr. Cundiff to "unclench" his

3

body and proceeded to place his hands under Mr. Cundiff's underwear. (Doc. # 28 at 6; Doc. # 39 at 4). Officer Ullrich used a "bladed hand," referred to as "the back of his straight hand" by Mr. Cundiff, to "go down the length from the top of the cleft" of Mr. Cundiff's buttocks, searching for concealed materials. (*Id.*). During this action, Mr. Cundiff alleges that Officer Ullrich inserted a finger into Mr. Cundiff's rectum. (Doc. # 39 at 4). Officer Ullrich denies that he touched Mr. Cundiff beyond "running" his bladed hand "down the length" of Mr. Cundiff's backside. (Doc. # 28 at 6-7). After searching Mr. Cundiff's backside, Officer Ullrich searched Mr. Cundiff's genital area, "[running] his hand along the seam between Mr. Cundiff's hip and groin," and "moving Mr. Cundiff's scrotum and penis out of the way" to "check under [his] scrotum" for concealed drugs. (Doc. # 28 at 7; Doc. # 39 at 4).

    Multiple Covington Police officers observed the search occurring. (Doc. # 28-1). After Officer Ullrich did not locate drugs on Mr. Cundiff's person, he asked Mr. Cundiff "What do you got hidden up inside of you?" to which Mr. Cundiff replied, "I don't have nothing inside of me." (Doc. # 39 at 4). Mr. Cundiff then inquired, "Inside of me?" to which Officer Ullrich responded "Yes, inside of you. Something shoved right up into your butt." (*Id.*). Mr. Cundiff refuted that anything was inside of his body and volunteered to go to a doctor for an examination. (*Id.*). After the search ended, Officer Ullrich commented to another officer that Mr. Cundiff "won the 'I want it more' game, because it's far enough in him that I can't find it," referring to the drugs Officer Ullrich believed Mr. Cundiff had concealed. (Doc. # 39 at 5). Mr. Cundiff was given a citation for running a stop sign and otherwise released by the officers. (*Id*). At no point during the search did Officer Ullrich seek or obtain a search warrant, "because, in his experience, such warrants are rarely

4

granted absent extreme circumstances." (Doc. # 28 at 7). Nor did he obtain Mr. Cundiff's consent to search his person.

Mr. Cundiff filed this action on June 7, 2021, alleging violations of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983, in addition to an allegation of civil conspiracy under 42 U.S.C. § 1985. (*See* Doc. # 1). More specifically, Mr. Cundiff alleges that Officer Ullrich's search of his body violated the Fourth Amendment, that Officer Ullrich's conduct was retaliation for Mr. Cundiff's insulting comment, and that Officer Ullrich conspired with other Covington Police officers to deprive Mr. Cundiff of Constitutionally protected rights. (*See id.*).

### III. ANALYSIS

#### A. Standard of Review

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine dispute of material fact exists where no reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). After that burden is met, to avoid the entry of summary judgment, the non-moving party must produce "specific facts" showing a "genuine issue" necessitating the matter moving forward to trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). However, where

5

applicable, the non-moving party's rebuttal burden is light, as the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence exists to make a factual issue a proper question for a jury. *Anderson*, 477 U.S. at 250. In making that determination, the Court does not weigh evidence or determine the truth of matters asserted. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989), as the law is clear that "the non-moving party must cite specific portions of the record" to defeat a summary judgment motion. *U.S. Structures, Inc. v. J.P. Structure, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). Accordingly, "the inquiry performed is the threshold inquiry of determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

When deciding cross-motions for summary judgment, the standard of review remains the same, as "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). The Court will accordingly address both parties' motions individually and in turn.

### B.     Defendant's Motion for Summary Judgment (Doc. # 28)

Officer Ullrich has moved for summary judgment on all claims made against him. (Doc. # 28). Because factual issues remain, summary judgment cannot be granted with respect to the Fourth Amendment claim and the First Amendment retaliation claim. Mr. Cundiff has conceded his civil conspiracy claim, and summary judgment will be granted in favor of Officer Ullrich on that claim.

#### *1.     Fourth Amendment*

The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Sixth Circuit has held that the "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). Generally, "[a] warrantless search or seizure is '*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those well-established exceptions to the Fourth Amendment's warrant requirement is traffic stops of automobiles. *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010). However, the automobile exception to the Fourth Amendment only extends to a suspect's automobile – not the suspect's body. *E.g., California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

After a vehicle is legitimately stopped based on reasonable suspicion of a traffic violation, searches of a motorist's person are limited to checking for weapons – commonly

7

known as a *Terry* frisk. *Terry v. Ohio*, 392 U.S. 1, 26 (1968). More specifically, an officer may order passengers out of the car, and an officer may frisk or pat-down a motorist only if the officer "harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). However, such a "protective search – permitted without a warrant and on the basis of reasonable suspicion less than probable cause – must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 26); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) (emphasizing that the purpose of a *Terry* frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.").

The law is otherwise clear that an officer "overstep[s] the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*" by any type of "continued exploration" of the subject's clothing or body "after having concluded that it contained no weapon." *Dickerson*, 508 U.S. at 378. In other words, to conduct more than a *Terry* frisk or pat-down of a person's clothing for weapons, the searching officer is plainly required to have a warrant and probable cause. *Ybarra v. Illinois*, 444 U.S. 85, 96 (1979). The Supreme Court has emphasized that the Fourth Amendment especially protects against searches involving the body, as these types of searches implicate "the individual's dignitary interests in personal privacy and bodily integrity." *Winston v. Lee*, 470 U.S. 753, 761 (1985).

Here, Officer Ullrich did not have a warrant or consent to search Mr. Cundiff's body, and it is even unclear whether he had sufficient reasonable suspicion of Mr. Cundiff being

8

armed to conduct a *Terry* frisk. Officer Ullrich has not argued that he performed the search pursuant to any Fourth Amendment exception. (Doc. # 28). Accordingly, the only way that Officer Ullrich can prevail on summary judgment is by showing that the uncontroverted facts demonstrate that his search was reasonable, or that he is entitled to qualified immunity. Unfortunately for Officer Ullrich, the uncontroverted facts on this record are few and far between. In other words, the facts are far too disputed for him to be granted summary judgment on the Fourth Amendment claim, because when construed in a light most favorable to Mr. Cundiff, a reasonable jury could find for Mr. Cundiff.

### a. The Search's Reasonableness

When a warrantless search is performed, the Fourth Amendment is not invoked if the search was reasonable. In this context, the reasonableness of a warrantless search is determined by a balancing test which weighs: (1) the extent of the threat to the suspect's health and safety; (2) the extent of the intrusion on the individual's dignitary interests in personal privacy and bodily integrity; and (3) law enforcement's need for the evidence. *United States v. Ruffin*, 979 F.3d 528, 533 (6th Cir. 2020) (citing *United States v. Booker*, 728 F.3d 535, 546-47 (6th Cir. 2013)). To prevail on summary judgment, Officer Ullrich must show that the uncontested facts are in his favor, and that no reasonable jury could find that his search of Mr. Cundiff was not reasonable. *Anderson*, 477 U.S. at 250.

Because of the following contested facts, the Court concludes that a reasonable jury could find that the search was not reasonable. First, the parties dispute whether Officer Ullrich penetrated Mr. Cundiff's rectum during the search. (Doc. # 28 at 11; Doc. # 39 at 10). Viewing this fact most favorable to the nonmoving party, a warrantless search

9

involving penetration of a suspect's body would be an obvious intrusion on an individual's dignitary interests in personal privacy and bodily integrity.  To the extent that Officer Ullrich suggests that "no one else on the scene even seemed to know that had occurred," meaning that "the alleged intrusion was minimal" (Doc. # 28 at 9-10), the other officers' knowledge of the penetration bears little weight on Mr. Cundiff's own privacy interests.

Second, the parties dispute the extent that Officer Ullrich had good reason to believe that Mr. Cundiff had hidden drugs inside his body.  While Officer Ullrich argues that Mr. Cundiff's "movements and his delay in pulling over suggested that Cundiff had hidden drugs on his person or inside a body cavity" (Doc. # 28 at 4), Mr. Cundiff's passenger testified that she never witnessed any such movements occurring.  (Doc. # 39 at 2).  Whether Mr. Cundiff took these movements bears on the third factor, which addresses law enforcement's need to locate evidence.  *Ruffin*, 979 F.3d at 533.  In the absence of Mr. Cundiff's movements in the car, a reasonable jury could find that the third factor weighs in his favor.

Otherwise, there are uncontroverted facts that would support the balancing test weighing in Mr. Cundiff's favor – especially on the second factor, which addresses Mr. Cundiff's privacy interests.  The parties agree that Officer Ullrich used his hands to search Mr. Cundiff's body, below his clothing, without a warrant or consent.  The manner in which Officer Ullrich "bladed" his hand or otherwise conducted the search does not negate the fact that Mr. Cundiff's body was searched without a warrant, and without his consent.  Officer Ullrich's body camera captured the search, and multiple Covington Police officers witnessed it.  The camera footage showed Mr. Cundiff's bare buttocks in plain view, and it also showed Officer Ullrich using his hands to touch Mr. Cundiff's genitals.  (Doc. # 28-

1). In the absence of a warrant or consent, a reasonable jury could find in Mr. Cundiff's favor, and summary judgment for Officer Ullrich is thus not appropriate.

### b. Qualified Immunity

Because the Court is called to construe the facts in a light most favorable to the non-moving party, it likewise cannot grant Officer Ullrich qualified immunity. The doctrine of qualified immunity shields police officers and other government officials from liability so long as their conduct does not violate clearly established rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). However, granting qualified immunity on summary judgment requires the moving defendant to show that uncontroverted facts entitle him to receive it. *See Campbell v. Mack*, 777 F. App'x 122, 130 (6th Cir. 2019).

Here, when construed in Mr. Cundiff's favor, the number of contested facts show that Officer Ullrich may or may not have violated a clearly established right. First, as previously noted, the parties disagree as to whether Officer Ullrich penetrated Mr. Cundiff's rectum. (Doc. # 28 at 11; Doc. # 39 at 10). Second, the parties dispute the existence and extent of Mr. Cundiff's movements in the car, which precipitated Officer Ullrich's belief that Mr. Cundiff was concealing drugs. (Doc. # 28 at 4; Doc. # 39 at 2). Third, the parties dispute whether and why Mr. Cundiff was "clenching" his muscles together, as Officer Ullrich believed that Mr. Cundiff was doing so to hold something inside of himself (Doc. # 28 at 6), and Mr. Cundiff says that he was doing so in response to the invasiveness of the search. (Doc. # 39 at 3). Fourth, the parties dispute the length of time it took Mr. Cundiff to pull over and his reasons for doing so. (Doc. # 28 at 3-4; Doc. # 39 at 2). Fifth, Officer Ullrich's body camera footage is inconclusive enough so that a

reasonable jury could believe either version of the facts. (*See* Doc. # 28-1). Lastly, the Court also notes that Officer Ullrich testified that that he did not pursue a warrant "because, in his experience, such warrants are rarely granted absent extreme circumstances." (Doc. # 28 at 7). Taken as true, that statement would weigh against granting qualified immunity.

In sum, there are simply too many factual disputes for the Court to make a legal determination about qualified immunity. For that reason, no certificate of appealability will issue, as the Court's denial of qualified immunity involves "no controlling question of law as to which there is substantial ground for difference of opinion[.]" 28 U.S.C. § 1292(b). Instead, the Court's denial is based on the purely factual disputes contained in the record. In the Sixth Circuit, denials of qualified immunity are only immediately appealable "to the extent that a summary judgment order denies qualified immunity based on a pure issue of law." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). No such pure issue of law exists here, and no certificate of appealability will issue.

### 2. *Civil Conspiracy*

In response to Officer Ullrich's Motion for Summary Judgment, Mr. Cundiff has conceded his civil conspiracy claim. (Doc. # 39 at 14). Accordingly, summary judgment will be granted in favor of Defendant.

### 3. *First Amendment Retaliation*

Lastly, Mr. Cundiff has alleged that Officer Ullrich conducted the search in retaliation for Mr. Cundiff insulting Officer Ullrich at the beginning of the traffic stop, which Mr. Cundiff alleges was protected speech under the First Amendment. To prevail on a First Amendment retaliation claim, a plaintiff must show:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Campbell*, 777 F. App'x at 134 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). With respect to the second element – whether the officer took an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct – the Sixth Circuit has "emphasize[d] that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. The second element's inquiry is "a question of fact," and "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398).

Construing the facts in a light most favorable to Mr. Cundiff, the Court concludes that the same factual issues which precluded summary judgment on the Fourth Amendment claim preclude summary judgment on the First Amendment claim. More specifically, the factual disputes related to the extent, manner, and nature of the search bear on whether it would deter a person of ordinary firmness from continuing to engage in protected conduct. If Mr. Cundiff's version of the facts are accepted as true, a reasonable jury could find for him that a search involving rectal penetration and extended

manipulation of the genitals would chill free speech. Accordingly, summary judgment in Officer Ullrich's favor is denied.[1]

### C. Plaintiff's Motion for Partial Summary Judgment (Doc. # 33)

Mr. Cundiff has moved for partial summary judgment on his Fourth Amendment claim "based on Defendant Ullrich's testimony regarding the events leading up to the search and the search itself, as Defendant Ullrich denies penetrating or touching Plaintiff's rectum." (Doc. # 33 at 1). According to Mr. Cundiff, the uncontested facts show that he is entitled to summary judgment on the Fourth Amendment claim. In analyzing this Motion, the Court incorporates all of the previously referenced rules of law, in addition to the previously identified factual disputes.

Construing those factual disputes in a light most favorable to Officer Ullrich, a reasonable jury could very well find in Officer Ullrich's favor regarding the reasonableness of the search. More specifically, if a jury believed that Mr. Cundiff was making furtive movements in the car and that it took him an extended amount of time to stop, thereby supporting Officer Ullrich's belief that Mr. Cundiff had hidden drugs in his body, the third factor, regarding law enforcement's need for evidence, could tilt in Officer Ullrich's favor. Additionally, if a jury believed Officer Ullrich's version of events with respect to the search itself, that he maintained a "bladed hand" and did not penetrate Mr. Cundiff's rectum, the second factor could be viewed as more neutral than otherwise. Lastly, the Court also notes that Officer Ullrich did say that the alleged drugs were "far enough in [Mr. Cundiff] that he couldn't find" them. This statement could be construed in one of two ways: that

---

[1] While Officer Ullrich very briefly asserts that he is entitled to qualified immunity (Doc. # 28 at 16-17), the Court notes that if his argument were fully developed, qualified immunity would be denied on this claim for the same fact-based reasons it was denied on the other claim.

Officer Ullrich didn't penetrate Mr. Cundiff's rectum at all, since he didn't find any drugs, or that Officer Ullrich wasn't able to penetrate Mr. Cundiff's rectum far enough. Either way, because the Motion currently analyzed is Mr. Cundiff's, when that statement is construed favorably toward Officer Ullrich, it shows that a reasonable jury could side with Officer Ullrich. Because of these factual disputes, in addition to those previously identified, summary judgment is not appropriate.

## IV.  CONCLUSION

The summary judgment stage exists for the purpose of "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Here, there are several genuine factual issues that can be reasonably resolved in favor of either party, and therefore, summary judgment must be denied.

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. # 28) is **GRANTED IN PART** and **DENIED IN PART**, being granted only with respect to Plaintiff's civil conspiracy claim, but being denied in all other respects;

(2) Plaintiff's Motion for Partial Summary Judgment (Doc. # 33) is **DENIED;** and

(3) The parties are **DIRECTED** to file a **Joint Status Report** within fourteen (14) days advising the Court on the possibility of settlement, and if necessary, dates of availability for trial in February and March 2024, and the anticipated length of trial.

This 4th day of August, 2023.



Signed By:
*David L. Bunning*  *DB*
United States District Judge

K:\DATA\ORDERS\Cov2021\21-72 MSJs.docx